Werner vs. The State.

WERNER, Plaintiff in error, vs. THE STATE, Defendant in error.

*April 17 — May 1, 1896.*

*Malicious trespass: Tearing down building on land of another: Title: Evidence: Pleading: " Wantonly " defined.*

1. In a prosecution under sec. 4441, R. S., for wilfully, maliciously, or wantonly tearing down a building, the state must both allege and prove that the building was "standing or being upon the land of another" person than the defendant or the person under whom he seeks to justify the act; and hence evidence that the legal title was in such other person is admissible.
2. Although a complaint under said sec. 4441, R. S., alleges that defendant wilfully, maliciously, *and* wantonly tore down a building on the land of another, he may be convicted if he did so either wilfully, maliciously, *or* wantonly.

3. The word "wantonly," as used in said sec. 4441, R. S., means in reckless disregard of the lawful rights of the owner of the property injured or destroyed — heedless of the necessary results of the act complained of.

4. The question being whether one who had torn down a building honestly believed and had good reason to believe that his father was the owner and in possession of the land on which such building stood, evidence that his sister had accepted a mortgage of said land from their father was irrelevant.

5. A witness who had heard a railroad official trying to make some arrangement with defendant's father for passage over the land was properly precluded from testifying as to what position she had been told such official held.

ERROR to review a judgment of the circuit court for Calumet county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

*J. S. Anderson,* for the plaintiff in error, contended, *inter alia,* that in cases of this kind neither title nor right of possession is in issue. *Jenkins v. State,* 7 Tex. App. 146; *State ex rel. Murphy v. Rising,* 10 Nev. 97; *Dawson v. State,* 52 Ind. 478. The act must proceed from malice and that malice must be against the owner of the property, not against another person or the property itself. *Comm. v. Walden,* 3 Cush. 558; *State v. Robinson,* 3 Dev. & B. Law, 130, 32 Am. Dec. 661; 1 Bish. Crim. Law, § 569; East, P. C. 1072 *et seq.; State v. Pierce,* 7 Ala. 728; *State v. Jackson,* 12 Ired. Law, 329; *State v. Wilcox,* 3 Yerg. 278; *U. S. v. Gideon,* 1 Minn. 292; *State v. Enslow,* 10 Iowa, 115; *Johnson v. State,* 37 Ala. 457. The charge of the trial judge that malice might be inferred from the act itself was erroneous. *Bulkeley v. Smith,* 2 Duer, 261; *Lossen v. State,* 62 Ind. 437. If the act of so-called mischief is done under a claim of right, the offense is not perpetrated. 2 Bish. Crim. Law, § 998; *Goforth v. State,* 8 Humph. 37; *State v. Enslow,* 10 Iowa, 115; *State v. Newby,* 64 N. C. 23; *Hill v. State,* 43 Ala. 335; *Hobson v. State,* 44 id. 381. An honest belief in title is a defense; and there is not a particle of evidence to rebut the evidence of the defendant that he honestly believed the land to be his

father's and that his father had title. That he had the possession is undisputed. *State v. Gurnee,* 14 Kan. 111; *Lossen v. State,* 62 Ind. 437; *Reg. v. Matthews,* 14 Cox C. C. 5; *Barlow v. State,* 120 Ind. 56.

For the defendant in error there was a brief by the *Attorney General* and *John L. Erdall,* Assistant Attorney General, and oral argument by *Mr. Erdall.* They argued, among other things, that in actions of this character it is necessary to both allege and prove the ownership of the property. Bishop, Stat. Crimes, § 443, and cases cited in note 1; *State v. Smith,* 21 Tex. 748; *State v. Jackson,* 7 Ind. 270; *Davis v. Comm.* 30 Pa. St. 421. As to the meaning of the terms "wilfully, maliciously or wantonly" as used in sec. 4441, R. S., they cited *State v. Preston,* 34 Wis. 675, 683; *State v. Castle,* 44 id. 670; *State v. Robinson,* 32 Am. Dec. 661, 668, note; Bish. Stat. Crimes, §§ 433–436; *Territory v. Crozier,* 6 Dak. 8; *Mosely v. State,* 28 Ga. 190; *State v. Avery,* 44 N. H. 392; *Johnson v. State,* 37 Ala. 457; *Nutt v. State,* 19 Tex. 340.

CASSODAY, C. J. . The plaintiff in error, after having been found guilty in a justice's court and on appeal to the circuit court, was retried by a jury and found guilty "as charged" in the complaint," of having, with others, October 29, 1893, at the village of Brillion in Calumet county, "with force and arms, wilfully, maliciously, and wantonly," torn down, injured, and destroyed a building of the value of $50, situated on the lands therein described, then and there owned and possessed by William V. McMullen and Charles Bruss, against the peace and dignity of the state of *Wisconsin;* and thereupon the sentence of the court was that he should be punished by the payment of a fine of $5 and costs of prosecution, taxed at $211.44, and that he stand committed to the county jail until such fine and costs should be paid, *provided,* however, that such imprisonment should not exceed

twenty days.    Thereupon the requisite steps were taken staying proceedings pending this writ of error.

There is evidence tending to prove that, for a number of years prior to the time in question, the land upon which the building was situated was open and uninclosed, and the public had been allowed to use the same indiscriminately for the purpose of hauling freight across it and storing freight thereon; that the father of the plaintiff in error was the owner and in the possession of a store and other buildings adjoining the premises, and that some of such buildings projected over his line onto the land in question; that Edward Dascom, claiming to be the owner of the land in question, sold and conveyed the same to McMullen and Bruss, October 17, 1893; that on Saturday, October 28, 1893, McMullen and Bruss constructed the building in question; that on the next day the plaintiff in error, without their knowledge or consent, took part in tearing down the same; and hence the prosecution.

Counsel has assigned twenty-seven errors.    It is admitted, however, that the facts in the case are few and simple.

1. The first group of errors complained of consists in allowing the state to prove that the legal title to the land upon which the building in question was situated was, at the time, in McMullen and Bruss, as alleged in the complaint.    While it is true, as contended by counsel, that it is not the province of such a prosecution to try the title to land as in an action of ejectment, nor to perform the function of an action for forcible entry and unlawful detainer, nevertheless it was essential for the state not only to allege and prove that the plaintiff in error wilfully, maliciously, or wantonly tore down or injured the building in question, but also that the same was at the time "standing or being upon the land of *another*" person than the plaintiff in error or the person under whom he justified the tearing down of the same.    R. S. sec. 4441.    For that purpose, evidence tending

to prove that the legal title was in McMullen and Bruss was admissible. The trial court, however, did not make the case turn on the establishment of such legal title. True, the court charged the jury to the effect that it appeared from the evidence that the legal title was in McMullen and Bruss, and that if no one else was in possession, and they could get peaceable possession, then they had the right to take such possession. On the other hand, the court charged the jury to the effect that the plaintiff in error had offered evidence tending to prove that his father, claiming to be the owner of the strip of land in question, had been in possession of the same since 1880, and that it had been used by the public with his consent and permission; and that if his father was so in possession, and was honestly and in good faith claiming to own the same, then the plaintiff in error had the right to defend that possession by removing any obstruction placed upon the land, doing no unnecessary damage. The court also charged the jury to the effect that it was for them "to determine, from all the evidence in the case, who had possession of that land." We perceive no error in such rulings.

2. Counsel contend, under the second group of errors assigned, that in order to convict the plaintiff in error under the statute cited it was necessary for the jury to find that he was actuated by express malice against the owner of the property injured or destroyed; that there must be a special desire to injure him; that it could not be imputed or found from the nature of the act; that mere general malice was insufficient.

Upon those questions the court charged the jury, among other things, as follows: "Where, as here, the controversy is over a question of disputed title or disputed ownership or possession of lands, it becomes a question of fact for the jury to determine whether or not there was malice or ill will in the act which was performed, and this you must determine

from all the evidence which has been placed before you in regard to the matter. . . . If you find from the evidence that the defendants in good faith entered on the premises and tore down the building, actually believing that Peter Werner was the owner of said land and had been in possession of the same for a series of years, and they had reasonable ground for so believing, and that their only motive was to defend the possession of said Werner, then you should acquit the defendants. If, on the other hand, you find that they had no reasonable grounds to believe that Peter Werner was the owner of said land and in the possession of the same, then you should find them guilty. Now, it is for you to determine from all the facts in the case whether these defendants had any reasonable ground for believing that Peter Werner was the owner of this land. It is for you to determine whether or not these defendants honestly believed that Peter Werner was the owner of the land, and removed this building when acting in such honest belief, for the purpose of protecting the possession of Peter Werner to these lands. If you find that they did have such honest belief, or [and] had good reason for so believing, and removed this building only for the purpose of protecting that possession, as I have said, then you should acquit the defendants. If you find that, on the other hand, they did not have such honest belief that Peter Werner did have the possession of the lands, but that they tore down the building as a matter of spite or ill will towards McMullen and Bruss, because they had ascertained that they had purchased the title of these lands and had become the owners of them, then you should convict them. . . . On the part of the defendants, I am requested to instruct you, and do instruct you, as follows: 'If you find that the acts complained of were committed by the defendants in an honest belief that the defendants, or either of them, had the right to take down and

remove the building, and that he did so only for the purpose of protecting the rights or supposed rights of Peter Werner in these premises, and not from spite, ill will, hostility, or malice towards McMullen and Bruss, or either of them, personally, you must find the defendants not guilty.'"

The offense prescribed by the statute, as indicated, consisted in "wilfully, maliciously, *or wantonly*" tearing down, mutilating, defacing, or injuring any building "standing or being upon the land of another, or held in trust." S. & B. Ann. Stats. sec. 4441. True, the complaint is that he "wilfully, maliciously, *and wantonly*" tore down the building, etc. Nevertheless, we are constrained to hold that, if the jury were justified in finding that he was guilty either of wilfully or maliciously or wantonly tearing down the building, then the verdict is supported by the evidence. "Wantonly," as thus used, may be defined as the reckless disregard of the lawful rights of the owner of the building,— a heedlessness of the necessary results of the act complained of. *Cobb v. Bennett*, 75 Pa. St. 326; *Stucke v. M. & M. R. Co.* 9 Wis. 202; *Lockwood v. Belle City St. R. Co.* 92 Wis. 110. Such being the statute and the nature of the charge, it is unnecessary to consider decisions under statutes which prescribe punishment merely for wilful and malicious conduct. It follows that there was no error in the portions of. the charge quoted, nor in refusing the motion for a nonsuit, nor to discharge the plaintiff in error.

3. We perceive no error in excluding testimony as to whether the sister of the plaintiff in error had accepted a mortgage from her father upon the land in question. Such testimony would have been irrelevant.

4. The same witness, after testifying that she heard some railroad official, not a local agent at Brillion, trying to make some arrangement with her father to pass over this land, said that she had inquired of one Thomson as to who

the man was,— but the court precluded her from testifying as to what position Thomson told her the man held. We perceive no error in such ruling.

We find no substantial error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.