Alan Curtiss BYRD, Petitioner,

v.

Thomas R. ISRAEL, Warden, and the
Attorney General of the State of
Wisconsin, Respondents.

Civ. A. No. 80–C–650.

United States District Court,
E. D. Wisconsin.

May 27, 1981.

Mark Lukoff, First Asst. State Public
Defender, Milwaukee, Wis., for petitioner.

Jerome Schmidt, Asst. Atty. Gen., Madison, Wis., for respondents.

## DECISION and ORDER

TERRENCE T. EVANS, District Judge.

In a criminal complaint filed on April 8, 1977, three gentlemen from Chicago, Alan Byrd, Gerald Allen and Tommie Gordon, were charged with the April 3, 1977 armed robbery of a Milwaukee grocery store located at 3119 South Clement Avenue. Byrd has petitioned for a writ of habeas corpus alleging that his constitutional rights were violated during his trial on the charge. The trial resulted in Byrd's conviction. He was sentenced to serve a term of ten years.

In identical language, the charging portion of the complaint and the subsequently filed Information charged the crime in question as follows

"... on 04/03/77 at 3119 S. Clement Ave., City of Milwaukee, as parties to a crime, with intent to steal, did feloniously take property, money, from the presence of Susan Dulak, the owner, by threatening the imminent use of force against the person of the owner, Susan Dulak, and while armed with a dangerous weapon, to wit: a handgun, with intent thereby to compel the said owner to acquiesce in the taking or carrying away of said property, defendant [Gerald] Allen committing said crime while his usual appearance was disguised by the wearing of a ladies['] nylon stocking over his face with intent to make it less likely that he would be identified with said crime, contrary to Wisconsin Statutes sections 943.32(1)(b) & (2), 946.62 and 939.05."

The probable cause section of the complaint, stated through a Milwaukee Police officer, set forth the underlying basis for the charge as follows:

"(1) He is advised by Susan Dulak, a citizen whom he believes to be reliable in this matter that on April 3, 1977 she was employed as a clerk at a checkout counter in a certain retail grocery store located at 3119 South Clement Ave., City and County of Milwaukee; that while she was acting in said capacity a white male came to her, grabbed her by the arm, and pointed a dark colored revolver at her; that the said actor was wearing what appeared to be a nylon stocking over his face; that the said actor ordered Dulak to open a cash drawer which contained proceeds belonging to the said store; that also present at said time was another employee of said store, a citizen by the name of Mary Hermann; that Dulak further states that she observed the said male reach into the abovementioned cash drawer and remove from it certain monies, flee out the front door of said grocery store and east through residential yards; that Dulak further states that she consented to the taking of the money by the said male because he possessed the abovementioned handgun.

"(2) Your complainant is advised by the above named Mary Hermann, who he believes to be reliable in this matter, that she was working as an employee of the said store at 3119 South Clement Ave., City and County of Milwaukee, on April 3, 1977; that she observed an unknown male wearing a nylon stocking point a handgun at herself and the abovementioned Susan Dulak; that the actor then ordered both of them into an office area and demanded that a cash drawer be opened; that Hermann states that she then opened the cash drawer and observed the actor reach in and remove monies belonging to said store from the cash drawer and then flee through the front door; that she states that she consented to the taking of said money by the actor because he was armed with a handgun."

"(3) That your complainant is advised by Richard Majdecki, that he is the owner of the abovementioned store at 3119 South Clement Ave., City and County of Milwaukee; that subsequent to the taking of the money described above he checked the records of said store and determined that approximately $3,000 in currency had been taken by the abovementioned actor.

"(4) Your complainant is advised by the statement of defendant Allen, that he did on April 3, 1977 drive to a grocery store on the south side of Milwaukee; that within his auto at said time were defendants Byrd and Gordon; that he parked his auto in an alley just east of the food store and that he and defendant Byrd went into the store; that defendant Byrd asked the clerk for change while he, Allen, went to the rear of the store; that while he, Allen, was in the rear of said store he placed a nylon stocking over his face and walked toward the checkout counter; that Byrd walked through the checkout counter and stood at the front door; that he, Allen, removed a .38 caliber snubnose revolver from his pocket, grabbed the clerk by the arm and pointed the gun at her and another female clerk; that he demanded that the cash drawer be opened and the second clerk did open the cash drawer; that he reached in and removed approximately $900 in currency and fled from the store following defendant Byrd; that he and Byrd returned to the car parked in the alley east of the store in which car defendant Gordon had remained; that while in said auto after taking the money he, Allen, divided the money with defendants Gordon and Byrd.

"(5) Your complainant is advised by the statement of defendant Gordon that he did on April 2, 1977 drive to Milwaukee with defendant Allen and defendant Byrd; that the three of them drove around Saturday night casing stores and supermarkets on the south side of Milwaukee; that on Sunday, April 3, 1977 they drove directly to a supermarket on South Clement in the City of Milwaukee;

that he, Gordon, was supposed to by agreement, be the driver of the getaway car; that he stayed in the automobile while defendants Byrd and Allen went into the above described supermarket; that several minutes later defendants Allen and Byrd returned to the vehicle and they sped off; that defendant Allen gave him, Gordon, approximately $300 of the proceeds from said robbery, defendant Allen stating that they got only $900." *

Byrd moved to dismiss the charge at the close of the state's case stating that the Information alleged that Susan Dulak was the owner of the property stolen, while the testimony showed that Mary Hermann had possession. The trial judge, Robert Landry, denied the motion and the defense produced no witnesses. The jury found Byrd guilty of armed robbery, party to a crime, on June 20, 1979. On June 22, 1979, Judge Landry permitted the state, over Byrd's objections, to amend the information to allege that Susan Dulak *and* Mary Hermann were the owners of the money taken in the robbery.

On appeal, the Wisconsin Court of Appeals ruled that the "information ... alleged the essential elements and was adequate," because the "allegation of ownership in the information was sufficient to inform [Byrd] that he was charged with the armed robbery of another who had a superior right of possession to the property taken." The Court of Appeals also held that there was no material variance between the information and the proof, and that Byrd was not prejudiced by the amendment of the information.

The Wisconsin Supreme Court denied discretionary review, and Byrd filed this petition for a writ of habeas corpus.

I

Wis.Stats. § 943.32 defines robbery in the following manner:

"(1) Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means is guilty of a Class C felony:

(a) By using force against the person of the owner with intent thereby to overcome his physical power of resistance to the taking or carrying away of the property; or

(2) By threatening the imminent use of force against the person of the owner or of another who is present with intent thereby to compel the owner to acquiesce in the taking or carrying away of the property.

(2) Whoever violates sub. (1) while armed with a dangerous weapon is guilty of a Class B felony.

"(3) In this section 'owner' means a person in possession of property whether his possession is lawful or unlawful."

As in the state court proceedings, Byrd argues that he could not have been guilty of armed robbery because Susan Dulak was not the "owner" of the property stolen within the meaning of § 943.32. The argument is totally without merit.

■ "The purpose of the information is to inform the defendant of the charges against him. Notice is the key factor." *Whitaker v. State*, 83 Wis.2d 368, 373, 265 N.W.2d 575 (1978). The information here was a concise statement referring to one specific criminal transaction: the armed robbery of the grocery store at 3119 South Clement Avenue, Milwaukee, on April 3, 1977, by three men, one of whom was wearing a nylon stocking over his face. Byrd was one of the defendants named. The information gave him adequate notice of the crime of which he was convicted.

Both Susan Dulak and Mary Hermann were employees of the store that was robbed. Both were present during the commission of the robbery; both were involved in transferring the money to the robber. Naming Dulak, or Hermann, or both of them, as "owner(s)" provided Byrd with notice of the specific criminal transaction in which he was alleged to have taken part.

---

* While the repetitive use of the word "said," (i. e., *said* actor took *said* money from *said* store, etc.) from a grammatical standpoint, renders this complaint less than ideal, it nevertheless fully sets forth the underlying facts upon which the state relies.

That Hermann rather than Dulak had access to the office and the keys to the money drawer does not alter the fact that either of them, as store employees, had rights to the property superior to Byrd's. In an important sense, it was the *store* rather than its employees that were robbed, and the identity of the store representatives was irrelevant so long as the information gave Byrd sufficient notice.**

Two other Wisconsin statutes demonstrate the legislature's intent to define "owner" in the broadest terms:

· "971.32 *Ownership, how alleged.* In an indictment, information or complaint for a crime committed in relation to property, it shall be sufficient to state the name of any one of several co-owners...."

"971.33 *Possession of property, what sufficient.* In the prosecution of a crime committed upon or in relation to or in any way affecting real property or any crime committed by stealing, damaging or fraudulently receiving or concealing personal property, it is sufficient if it is proved that at the time the crime was committed either the actual or constructive possession or the general or special property in any part of such property was in the person alleged to be the owner thereof."

Wisconsin Criminal Jury Instruction 1480 *Armed Robbery* refers to the property taken as either in the "possession of" or "in the presence" of an individual. In keeping with this standard, the jury in Byrd's trial was instructed: "If you are satisfied beyond a reasonable doubt from the evidence in this case that Mr. Byrd did take monies from the *presence* or the possession of Miss Dulak, that the defendant intentionally took such property from Miss Dulak...." (emphasis added). The instruction given is consistent both with a broad definition of "owner" and with the "constructive possession" addressed in § 971.33.

** Byrd cites *Dunn v. United States*, 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979), in his behalf. There, the Supreme Court stated that "[t]o uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process." *Id.* at 106, 99 S.Ct. at 2194.

■ "The true inquiry in cases like this is not merely whether the proof at trial wandered from the charges made in the indictment. To be error, the variance must, in addition, be such as to 'affect the substantial rights' of the accused." *United States v. Donner*, 497 F.2d 184, 191 (7th Cir. 1974), *quoting Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935). A variance must be material and prejudicial to overturn a conviction. *United States v. Ray*, 514 F.2d 418 (7th Cir. 1975).

A similar rule is provided by Wis.Stats. § 971.26: "No indictment, information, complaint or warrant shall be invalid, nor shall the trial, judgment or other proceedings be affected by reason of any defect or imperfection in matters of form which do not prejudice the defendant." Section 971.-26 "requires a showing of *actual* prejudice," and even "a material variance ... cannot be held to be automatically prejudicial." *State v. Bagnall*, 61 Wis.2d 297, 305, 212 N.W.2d 122 (1973) (emphasis in original).

"A difference in the date of the crime between the complaint and the information (the information containing the correct date) has been held to be a matter of form and nonprejudicial under this statute. In *State ex rel. Wenzlaff v. Burke* [250 Wis. 525, 27 N.W.2d 475 (1947), the Wisconsin Supreme Court] was faced with a challenge to the sufficiency of an information charging attempted rape. The information charged the defendant with assaulting a female and did not name any particular victim. The court agreed that an information must contain circumstances necessary to an exact description of the offense as defined by the statute creating it, but that a defect which does not go by the substance of the offense does not vitiate the information.

Unlike petitioner Dunn, however, Byrd was convicted for the specific incident that formed the basis of his armed-robbery conviction. Moreover, *Dunn* involved a situation where the factual basis for the charge did not fit within the elements of the crime.

'... An information or indictment has been held sufficient after verdict even though it failed to allege the name of the person collaterally involved in the offense. [Cases omitted.] ... A plea of guilty has the same effect as a verdict of guilty with regard to defective averments of an information or indictment....' [*Id.* at 532, 27 N.W.2d 475.]

The court concluded that the defect in *Wenzlaff* was one of form only. *If failure to name the victim is a non-jurisdictional defect of form only, certainly a mistake in the naming of the correct victim is also one of form only* and if not prejudicial to the defendant such a defect does not invalidate the information or any proceedings based thereon by virtue of sec. 971.26, Stats." *Id.* at 30, 27 N.W.2d 475 (emphasis added).

*See also Smith v. State*, 63 Wis.2d 496, 498, 217 N.W.2d 257 (1974) (fact that information did not name murder victim did not deprive trial court of jurisdiction). The variance as to "ownership" or "possession" between employees Dulak and Hermann—both present and both threatened during the commission of the armed robbery—was not material to the offense. Both were involved in transferring the money to the robber, and both had a right to the property, as store employees, superior to Byrd.

In *State v. Bednarski*, 1 Wis.2d 639, 85 N.W.2d 396 (1957), the Wisconsin Supreme Court considered the defendant's contention that his conviction, under a statute prohibiting the willful tearing down of any fence standing upon the land "of another," was not supported by the evidence where the complaint charged that the land belonged to one John Schaefer but the proof indicated that it belonged to the state. The court concluded that:

"There was no fatal variance between accusation and proof even if we accept the view that the land belonged to the state instead of to the Schaefers. *The precise ownership of the land was not material to the merits of the case, it not being contended that defendant was the owner or had any authority from the owner; and there is no showing that the defendant was misled to his prejudice by the reference in the complaint and warrant to ownership* by Schaefer. It was therefore a case for application of sec. 957.16, Stats.1955, authorizing amendment to conform to the proof in cases where the variance is not material to the merits of the action, and providing that after verdict the pleading shall be deemed so amended if no objection based on the variance was timely raised at the trial. Supporting the view that the variance was properly disregarded here are *Anderson v. State*, 221 Wis. 78, 85, 265 N.W. 210, ...; *State v. Carroll*, 239 Wis. 625, 633, 2 N.W.2d 211, ...; *State ex rel. Wenzlaff v. Burke*, 250 Wis. 525, 531, 27 N.W.2d 475...." *Id.* at 642–43, 85 N.W.2d 396 (emphasis added).

*Bednarski*, like *Bagnall*, refutes Byrd's contention that the variance in "ownership" or "possession" was material or prejudicial. *See Baker v. State*, 88 Wis. 140, 59 N.W. 570 (1894). *See also Anderson v. State*, 221 Wis. 78, 265 N.W. 210 (1936). Moreover, it is well established in Wisconsin that when the information contains a citation to the statute allegedly violated, here § 943.32, that reference "necessarily carrie[s] with it all of the elements of the offense charged under that section." *State ex rel. Bell v. Columbia County Ct.*, 82 Wis.2d 401, 408, 263 N.W.2d 162 (1978) *quoting Brown v. State*, 73 Wis.2d 703, 707, 245 N.W.2d 670 (1976).

Byrd makes the questionable assertion that the *Bednarski* statute prohibiting the tearing down of the fence of "another" defines a narrower class of victims than one proscribing the forcible taking of property from its "owner." Right or wrong, he misses the point. "Although an allegation that the property taken was owned by one person and proof that it was owned by another may give rise to a fatal variance in larceny cases, the rule is otherwise as to robbery, [because] a taking by force or putting in fear is the gist of the offense." 67 Am. Jur.2d *Robbery* § 66 (1973) (footnotes omitted). *See Walton v. State*, 64 Wis.2d 36,

41–42, 218 N.W.2d 309 (1974). It matters less that the property belonged to a particular owner than that it belonged to someone other than the robber. *See State v. Bowden*, 62 N.J.Super. 339, 162 A.2d 911 (1960). Here, the complaint alleged that money was stolen from two named employees of a particular store on a particular day in a particular manner. The information, before amendment, failed to include one employee arguably more important than the other. Nevertheless, a particular store named in the information was robbed, and Byrd received notice adequate to defend himself against the charge for which he was convicted.

### II

■ Byrd contends, as he did unsuccessfully in the Wisconsin courts, that he was denied his constitutional rights to due process and to be informed of the charges against him when Judge Landry permitted the state to amend the information after trial pursuant to Wis.Stats. § 971.29 to conform to the proof. That section provides that

> "At the trial, the court may allow amendment of the complaint, indictment or information to conform to the proof where such amendment is not prejudicial to the defendant. After verdict the pleading shall be deemed amended to conform to the proof if no objection to the relevance of the evidence was timely raised upon the trial."

The purpose of an information, as previously stated, is to inform the accused of the particular acts he is alleged to have committed. The information must enable the defendant to understand the offense charged so that he can prepare a defense. *State v. Waste Management of Wisconsin, Inc.*, 81 Wis.2d 555, 261 N.W.2d 147 (1978).

As noted above, the information gave Byrd sufficient notice of the charges against him. In *State v. Duda*, 60 Wis.2d 431, 440, 210 N.W.2d 763 (1973), the Wisconsin Supreme Court stated that

> "... the sentence regarding amendment after verdict was intended to deal with

technical variances in the complaint such as names and dates. The case law in Wisconsin considering this section concerns such technical amendments. *State v. Lincoln* (1863), 17 Wis. 597 (\*579) (variance in spelling surnames deemed amended); *Baker v. State* (1894), 88 Wis. 140, 59 N.W. 570 (variance as to ownership and amount of money deemed amended in complaint charging larceny where penalty not affected); *Golonbieski v. State* (1898), 101 Wis. 333, 77 N.W. 189 (variance in corporate name deemed amended); *Meehan v. State* (1903), 119 Wis. 621, 97 N.W. 173 (larceny of watch deemed amended to larceny of gold watch); *Hess v. State* (1921), 174 Wis. 96, 181 N.W. 725 (allowing amendment of information before trial was not prejudicial where offense originally alleged to have been committed on August 24, 1918, but amended to August 13, 1918)."

The *Duda* court overturned the verdict because the variance between the complaint and proof demonstrated that the defendant committed a different offense than that charged. Here, Byrd was convicted of the same crime for which he was charged.

Both parties have quoted *Baker, supra*, cited in *Duda* above. There the Wisconsin Supreme Court stated:

> "The amendments, so far as Baker was concerned, all related to the amount of money stolen and the ownership of the same. Our statute expressly declares that: 'Any court of record in which the trial of an indictment or information is had, may forthwith allow amendment in case of variance between the statement in the indictment and the proof, in the following cases: In the name or description of any person, place, or premises, or of any thing, writing, or record, *or the ownership of any property described in the indictment or information*, and in all cases where the variance between the indictment or information are not material to the merits of the case.' R.S. sec. 4703. The amount or value of the money stolen only becomes important on a trial for the offense, when it is necessary to

fix the grade of the offense. *Phelps v. People*, 72 N.Y. 334. Here, the difference in the amount named in the original information and that named in the second count as amended is of no significance as bearing upon the offense charged. It is, of course, well that the person having the general ownership of property stolen should be named in the information as such owner, but it seems to be sufficient if the bailee or person having a special property interest therein be named as the owner. *Ibid.* The right of the trial court to amend the information in the manner indicated seems to be very clear under the statute." *Id.* at 155, 59 N.W. 570 (emphasis in original).

The state clearly has the better of this quotation. Moreover, the language of the present statute, Wis.Stats. § 971.29, is considerably broader than that of R.S. § 4703, the statute addressed in *Baker.* In connection with this argument, Byrd states, somewhat flippantly, that Susan Dulak "had no more interest, control, possession, or right to the money taken than the man in the moon." This argument ignores the fact that the money belonged to the store, and Dulak was employed by the store and was, therefore, trustee of its assets. It is obvious that her interest in the property was clearly superior to any interest Byrd might have had.

I also have no trouble concluding that the amendment to the charge was not prejudicial to Byrd. It did not change the crime: the offense was the same and resulted from the same transaction. The ownership of the money was never really in dispute, and it is patently absurd for Byrd to argue otherwise.

While I have noted the absurdity of the argument upon which this habeas petition is based, the case is not in a category apart from others that have arrived here recently. In two other cases decided today, *Jeffrey Lee Harris v. Israel*, (E.D.Wis., C.A. No. 80–C–489), and *Luis Albert Alicea v. Clausen* (E.D.Wis., C.A. No. 80–C–649), both brought and argued by the First Assistant State Public Defender, similarly weak positions are advanced. In all three cases, attempts to make silk purses out of sows' ears have failed. The dispatching of these meritless petitions, however, has not been an easy task. All have required attention they did not deserve. The flooding of courts with petitions of this quality should be discouraged.

I have noted an increase in the advancement of frivolous habeas claims. Frivolous claims are time-consuming. They divert attention from claims that have merit. Counsel should be advised that the Great Writ is entitled to more dignity than it is getting. It is a plate upon which to serve escargot, not quarter-pounders. Henceforth, I will make an effort to more quickly identify meritless petitions and dispatch them in a brief order rather than in lengthy decisions such as this.

## CONCLUSION

Therefore, IT IS ORDERED that Alan Byrd's petition for habeas corpus be denied.